UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: GREGORY SCOTT DALTON      CASE NO. 11-11106-DWH
                                 CHAPTER 11

CELLULAR SOUTH, INC.             PLAINTIFF/COUNTER-DEFENDANT

VERSUS                           ADV. PROC. NO. 11-01048-DWH

GREGORY S. DALTON, INDIVIDUALLY,
and d/b/a LOUISVILLE ELECTRONICS  DEFENDANT/COUNTER-PLAINTIFF

OPINION

On consideration before the court is a motion for partial summary judgment filed on behalf of the plaintiff/counter-defendant, Cellular South, Inc., ("Cellular South"); a response to said motion having been filed by the debtor/defendant, Gregory Scott Dalton, individually, and d/b/a Louisville Electronics, ("Dalton"); a reply having been filed by Cellular South; and the court, having considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157. This is a non-core proceeding as described in *Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

II.

Cellular South is a provider of wireless telecommunications services and equipment to its subscribers. It has traditionally performed retail functions through both company-owned retail outlets and by entering into agency agreements with independent contractors. When Cellular

South used independent contractors as agents, it allowed such contractors to sell its equipment and services on a commission basis. Cellular South paid a one-time commission to the agent for each new customer signed by the agent.

In 1992, Dalton entered into a non-exclusive agency agreement ("Agreement") with Cellular Holding, a predecessor to Cellular South, which was replaced by a similar Agreement on March 1, 1993. Dalton agreed to solicit customers for Cellular South in exchange for commission payments. Sections 3.1, 3.3, 3.4, and 3.5 of the Agreement are the provisions relevant to this litigation and read, in pertinent part, as follows:

> 3.1 Term: The term of the Agreement shall be one year, commencing on the date specified in Exhibit D of this Agreement, unless otherwise terminated or renewed pursuant to the provisions hereinafter provided. Cellular [][South] is cognizant of the increasing value of the Agency relationship to a successful AGENT and therefore will terminate a successful Agency relationship only if Cellular [][South] determines that the continuation of the Agency relationship would be detrimental to the overall well being, reputation and goodwill of Cellular [][South].
>
> 3.3 Renewal: This Agreement shall be automatically renewed for one-year terms unless terminated as herein provided.
>
> 3.4 Default: In the event AGENT fails to perform any of its obligations under this Agreement and such failure continues unremedied for a period of thirty (30) days after written notice is given by Cellular Holding to AGENT, then Cellular Holding may thereupon elect to cancel and terminate this agreement, which termination shall be effective immediately upon the expiration of said thirty-day period.
>
> 3.5 Termination: Either party may terminate this Agreement by giving the other party written notice of its desire to terminate at least thirty (30) days prior to the intended date of termination.

From 1992-2003, Dalton sold Cellular South equipment and services through his Radio Shack store located in Louisville, Mississippi. Cellular South paid commissions to him as required by the Agreement.

In 2003, Cellular South decided to discontinue its use of independent agents. On December 19, 2003, Cellular South sent Dalton a letter notifying him of its decision to terminate his Agreement, which was to be effective February 6, 2004. According to Cellular South, absent termination, the term of the Agreement would have expired on its own, pursuant to Section 3.3, on March 1, 2004. Dalton disputed Cellular South's right to terminate the Agreement, asserting that the requirement for termination set forth in Section 3.1 of the Agreement had not been satisfied.

Cellular South initially filed this cause of action in the Circuit Court of Winston County, Mississippi, in 2005, seeking a declaratory judgment that it acted within its contractual rights in terminating the Agreement, and that it owed no further duties to Dalton. Dalton filed a counterclaim seeking damages for Cellular South's alleged wrongful termination of the Agreement. The parties engaged in discovery and filed cross motions for summary judgment.

The Circuit Court granted summary judgment for Cellular South, finding that the Agreement was unambiguous, and that Cellular South had terminated the Agreement in compliance with its terms. Dalton appealed, and the Mississippi Court of Appeals affirmed the Circuit Court's decision. On further appeal, the Mississippi Supreme Court reversed both decisions, finding that the clauses of the Agreement were ambiguous when read together. It remanded the case to the Winston County Circuit Court for a jury determination as to whether

Cellular South had properly terminated the Agreement. *See, Dalton v. Cellular South, Inc.*, 20 So.3d 1227, 1233 (Miss. 2009).

Following remand, the parties completed discovery and a trial date was set for May, 2011. Dalton filed the above captioned bankruptcy case on March 9, 2011, pursuant to Chapter 11 of the Bankruptcy Code, and removed the cause of action to this court.

### III.

In its opinion, the Mississippi Supreme Court provided the following explanatory language which is extremely pertinent to the proceeding now before this court, to-wit:

> We find the contract clauses, standing alone, are unambiguous. Giving the words their plain and ordinary meaning does not generate an ambiguity. *See Miss. Farm Bureau Cas. Ins. Co. v. Britt*, 826 So.2d 1261, 1266 (Miss. 2002). However, when the clauses are read together, the clauses conflict. A conflict within the whole meets the very definition of ambiguity. "An ambiguity is defined as a susceptibility to two reasonable interpretations." *Amer. Guarantee & Liability Ins. Co. v. 1906 Co.*, 129 F.3d 802, 811-812 (5th Cir. 1997) (citing *Ins. Co. of N. Amer. v. Deposit Guar. Nat'l Bank*, 258 So.2d 798, 800 (Miss. 1972)). A widely-quoted judicial definition of "ambiguous" is as follows:
>
>> An "ambiguous" word or phrase is one capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.
>
> . . . .
>
> The contract at issue contains termination clauses that lack clarity and that are not harmonious. Clause 3.1 calls for a one-year term and restricts the right of CSI to terminate the agreement as to "a successful AGENT" and "a successful Agency relationship." Clause 3.3 allows for automatic one-year renewals. Clause 3.5 allows either party to terminate at will. Clause 3.4 and the unnumbered paragraph following clause 3.5 allow CSI to terminate with cause under certain circumstances. Thus, reasonable minds could reach different conclusions after reading the whole contract, in discerning the intent of the parties, while giving

4

> effect to each separate clause. We find that the conflicts among the clauses create an ambiguity. *Perkins* establishes the next tier of canons of construction, i.e., resolution of ambiguities shall disfavor the drafter of the instrument. *Id.* However, resolving the ambiguity to give Dalton the most favorable interpretation does not end the inquiry.
>
> The language of the contract requires the use of parol or extrinsic evidence to determine if Dalton is eligible for 3.1 consideration, as 3.1 applies only to "a successful AGENT" with "a successful Agency relationship," which cannot be determined within the four corners of the contract. A court cannot complete the third tier of analysis without parol or extrinsic evidence. In the case sub judice, this evidence was provided by CSI, whose president attested, "Dalton's agency was a successful agency...." However, that finding begs the question as to whether CSI terminated the contract for the reason it originally furnished to Dalton or whether CSI terminated the contract for the reasons offered after litigation began. That determination is a material fact and is in dispute. Whether CSI honored or breached the contract is a task for a jury, which leads us to Issue II. *See Royer Homes*, 857 So.2d at 752 ("If the terms of a contract are subject to more than one reasonable interpretation, it is a question properly submitted to the jury."); *Burton v. Choctaw County*, 730 So.2d 1, 9 (Miss. 1997).

*Dalton*, 20 So.3d at 1232-33.

As set forth hereinabove, the Mississippi Supreme Court concluded that the contract was ambiguous and reversed the grant of summary judgment to Cellular South.

Because of the aforementioned decision of the Mississippi Supreme Court, this court must address the implications of the *Rooker-Feldman* doctrine which provides that lower federal courts lack jurisdictional authority to sit in appellate review of state court decisions. The *Rooker-Feldman* doctrine derives its name from two United States Supreme Court cases, *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), holding that the jurisdiction of the federal district courts is strictly original, and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), holding that federal district courts do not have the authority to review final state court judgments. *See, United States v.*

*Shepherd*, 23 F.3d 923 (5th Cir. 1994) and 28 U.S.C. § 1257, which provide that federal appellate jurisdiction over state court decisions is vested almost exclusively in the United States Supreme Court. *See also, In the Matter of Erlewine (Ingalls v. Erlewine)*, 349 F.3d 205 (5th Cir. 2003), and *In the Matter of Reitnauer (Reitnauer v. Texas Exotic Feline Found., Inc.)*, 152 F.3d 341 (5th Cir. 1998).

Cellular South asserts that the Mississippi Supreme Court did not consider the narrow issue that it seeks to have this court determine in the present motion for partial summary judgment. For the reasons which will be set forth subsequently, Cellular South's assessment of the Mississippi Supreme Court's decision is not entirely correct.

The issue on which Cellular South seeks partial summary judgment is a determination of the appropriate time period for the accrual of damages should the court find that Cellular South wrongfully terminated the Agreement. Cellular South maintains that it expressed its intent to terminate the Agreement, effective February 6, 2004, through its letter to Dalton dated December 19, 2003. Thus, it contends that any damages awarded in the form of lost profits should be limited to the remainder of the term of the Agreement which would have expired on March 1, 2004. As mentioned above, Cellular South asserts that the Mississippi Supreme Court did not specifically address the time period during which Dalton's damages, if any, could accrue.

Cellular South maintains that the Agreement had a one-year term which was renewable annually unless terminated in accordance with the other provisions of the Agreement. It argues that the inclusion of the renewal provision in Section 3.3 of the Agreement shows the parties' intent to require mutual assent in order to renew the contract. *See, Byrd v. Simmons*, 5 So.3d 384, 388 (Miss. 2009). Cellular South states that there was obviously no mutual assent to renew

6

the Agreement because it expressly notified Dalton of its intent to terminate. Consequently, if this was inappropriate and if Dalton is entitled to lost profits as damages, these damages would be limited to the time remaining in the contract's one year term. This is, therefore, the limited issue on which Cellular South seeks partial summary judgment.

Dalton maintains that he is entitled to lost profits as damages from the date of termination of the Agreement through the remainder of his work life expectancy, not just for the balance of a one year term. Dalton asserts that Cellular South failed to comply with the requirements in Section 3.1 of the Agreement which, as noted hereinabove, states that Cellular South will terminate a successful Agency only if continuing the Agency relationship would be detrimental to the overall well being, reputation, and goodwill of Cellular South. Dalton states that because Sections 3.1 and 3.3 conflict, they should be construed against Cellular South as the drafter of the contract. He also asserts that the ambiguity should be resolved in favor of the protective language of Section 3.1, which requires the aforesaid determination that continuing the Agency relationship would be detrimental to Cellular South.

Although Cellular South contends that its present motion for partial summary judgment is much more narrow than the motion for summary judgment addressed by the Mississippi Supreme Court, the present motion still relies on the same issue that was decided by the Mississippi Supreme Court, that is, whether the Agreement, when considered as a whole, is ambiguous. The issue of the appropriate timing period for the accrual of damages still depends on whether Sections 3.3 and 3.5 supersede or "trump" the language set forth in Section 3.1. This court cannot determine the period for the accrual of damages without first resolving the ambiguity issue. Since the Mississippi Supreme Court did not resolve this issue, but remanded it to the

state trial court for adjudication, this court cannot review and reverse that decision without violating the *Rooker-Feldman* doctrine. Simply stated, this court is in the same position as the state trial court. The determination of Dalton's damages, if any, can only be determined after an evidentiary resolution of the ambiguity issue.

IV.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Bankruptcy Rule 7056; Miss. Bankr. L.R. 7056-1. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987); *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D. Miss. 1987). The moving party must demonstrate to the court the basis on which it believes that summary judgment is justified. The nonmoving party must then show that a genuine issue of material fact arises as to that issue. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.29 265 (1986); *Leonard v. Dixie Well Service & Supply, Inc.*, 828 F.2d 291 (5th Cir. 1987), *Putman v. Insurance Co. of North America*, 673 F.Supp. 171 (N.D. Miss. 1987). An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 272.

The court notes that it has the discretion to deny motions for summary judgment and allow parties to proceed to trial so that the record might be more fully developed for the trier of

fact. *Kunin v. Feofanov*, 69 F.3d 59, 61 (5th Cir. 1995); *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994); *Veillon v. Exploration Services, Inc.*, 876 F.2d 1197, 1200 (5th Cir. 1989).

V.

The court is of the opinion that there are material factual issues remaining in dispute in this proceeding which require the presentation of proof at an evidentiary hearing. The Mississippi Supreme Court's finding that the clauses in the Agreement, when read together, create an ambiguity is of primary concern. This court must first determine whether Cellular South wrongfully breached the Agreement, and, if so, then determine the appropriate level of damages. Consequently, the motion for partial summary judgment is not well taken and must be overruled.

An order, consistent with this opinion shall be entered contemporaneously herewith,

This, the  1st  day of February, 2012.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE